# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　　　Plaintiff,<br><br>**v.**<br><br>**$656,399.10 IN UNITED STATES CURRENCY,**<br>　　　　Defendant | Case No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, Teresa A. Moore, United States Attorney for the Western District of Missouri, and John Constance, Assistant United States Attorney, brings this verified complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit property pursuant to 18 U.S.C. § 981(a)(1)(C) to the United States based on violations of 18 U.S.C. §§ 1343 and 1344.

## THE DEFENDANT *IN REM*

2. The defendant $656,399.10 in United States currency was seized from Veridian Credit Union account number ending in 8581, in the name of Debra S. Ballard, on or about December 28, 2022, pursuant to Seizure Warrant 21-SW-00755-WBG, issued on December 19, 2022. A check for the entirety of the value of the defendant property is presently in the custody of the Federal Bureau of Investigation.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a).

4. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the defendant property is found in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395, because the action accrued in this district and the defendant property is found in this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes, or is derived from, proceeds traceable to any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)) or a conspiracy to commit such offense, with such offenses including violations of 18 U.S.C. §§ 1343 (wire fraud) and 1344 (bank fraud).

## STATEMENT OF PROBABLE CAUSE
## BUSINESS EMAIL COMPROMISE SCHEME

7. Callaway County, Missouri contracted with Little Dixie Construction ("Little Dixie"), a construction company based in Columbia, Missouri, to provide

construction services. In or around August 2021, Little Dixie's business email account was compromised. On August 9, 2021, an unknown subject sent an email using Little Dixie's email account to the Callaway County Board of Commissioners and an employee of UMB Bank providing changes to Little Dixie's ACH/Direct Deposit Bank account information and requesting that future payments be remitted to the new account. The email provided direct deposit account information that corresponded to a Bank of America ("BoA") account ending in 9099.

8. On August 11, 2021, Callaway County initiated a scheduled ACH wire from its UMB Bank account to the BoA account ending in 9099 for $993,498 as payment for recent construction work. On August 30, 2021, Callaway County initiated a second ACH wire to the BoA account ending in 9099 for $538,712.36 as payment for additional construction work. Callaway County initiated these funds transfers believing that the bank account to which they would be deposited belonged to Little Dixie.

9. The August 11, 2021, transfer of $993,498 was processed by BoA and credited to the account. The August 30, 2021, transfer of $538,712.36 was returned to UMB Bank with the code "Account Closed."

10. On September 3, 2021, a fraud investigator for UMB Bank contacted the Federal Bureau of Investigation ("FBI") to report that UMB believed that UMB and its customer, Callaway County, were the victims of a BEC scheme. Specifically, UMB reported that the account ending in 9099, which Callaway County and UMB believed was associated with Little Dixie, was, in fact, registered to Debra S. Ballard, an individual residing in Des Moines, Iowa.

11. Ballard's account balance prior to the transfer of funds from Callaway County was $28.69. On August 13 and 14, 2021, respectively, Ballard withdrew $5,200 in cash and made a $112.90 debit card purchase using funds from the BoA account ending in 9099. On August 13, 2021, Ballard also transferred $975,000 to a savings account, but transferred the funds back to the BoA account ending in 9099 three days later.

12. On August 16, 2021, four days after the funds from Callaway County were deposited in her account, Ballard used funds from her BoA account ending in 9099 to purchase a cashier's check in the amount of $988,009.60.

13. Besides the re-transferred funds and $0.01 interest earnings, there were no credits to Ballard's BoA account ending in 9099 between the time the funds from Callaway County were deposited on August 12 and when the $988,009.60 was withdrawn by cashier's check on August 17, 2021. Accordingly, the $988,009.60 cashier's check is traceable to the fraud proceeds in its entirety.

14. On August 17, 2021, $988,004.60 ($5.00 less than the full balance of the cashier's check) was deposited into Ballard's Veridian checking account ending in 8590.

15. The same day, Ballard transferred the entirety of the $988,004.60 from her checking account ending in 8590 to a Veridian member equity savings account number ending in 8581 (the "Veridian Account"). Ballard opened the Veridian Account on the same day with a $5.00 new account deposit.

16. On April 29, 2022, Special Agents from FBI's Omaha Division interviewed Ballard. Ballard reported that she is a widow with children residing in Arizona. She admitted to being lonely and looking for affection through online relationships.

17. Upon information and belief, this is a common profile of a person targeted by online scammers for defrauding and manipulation as money mules to launder proceeds derived from online scams and frauds.

18. Ballard reported to Special Agents that on January 6, 2020, she initiated conversation through Facebook with an account using the profile name "Denman Lee." Lee described himself to Ballard as a middle-aged white male working on an oil rig in Scotland. Ballard reported that she and Lee communicated frequently over a period of almost two years through Facebook messenger, telephone calls, and text messages. The two made plans to meet in Des Moines, Iowa, but ultimately never met after Lee provided an excuse for why he was no longer available.

19. Upon information and belief, this virtual relationship between Ballard and "Lee" is prototypical of online romance scams.

20. According to Ballard, in August 2021, Lee told Ballard he wanted to gift her approximately $1,000,000 in proceeds from his oil rig work. On or around August 11, 2021, Lee called Ballard and told her to check her BoA account ending in 9099 for the money he promised, which she did. Ballard confirmed the new deposit in the account for $993,498. Ballard acknowledged that she had never heard of Little Dixie and had no relationship with Callaway County, Missouri. Ballard reported that she believed the money she received was from Lee and that she had no idea it was stolen money.

21. Despite Lee's initial promise that the funds were a gift to her, Ballard remarked that Lee on multiple occasions instructed Ballard to disburse the funds for various needs of his own.

22. Upon information and belief, the transfer of substantial funds to Ballard's account and subsequent requests by Lee to transfer the funds elsewhere is consistent with common methods online scammers use to launder their illicit proceeds into the banking system using intermediaries.

23. Following transfer of funds into the Veridian Account, Ballard reported that Lee instructed Ballard to wire $425,000 for him to complete the purchase of a home from a "Gail Heurung." Veridian refused the transfer because they could not locate anyone by that name attempting to sell property. According to Ballard, Lee then directed Ballard to purchase cashier's checks and mail them to other parties for various reasons. Lee also directed Ballard to purchase a car for herself, but subsequently told her to resell it and send him the proceeds.

24. Upon information and belief, these actions are consistent with attempts by an online scammer to layer and integrate the proceeds of frauds using an intermediary money mule.

25. Ballard reported that she ultimately became suspicious of Lee and ended their relationship after Lee provided varying explanations as to where to send money and why.

26. Between August 27, 2021, and September 2, 2021, Ballard withdrew over $325,000 from the Veridian Account using counter checks before Veridian froze the account.

6

Case 4:23-cv-00020-RK   Document 1   Filed 01/10/23   Page 6 of 9

27. There were not any deposits into the Veridian Account between August 17, 2021, and November 30, 2022, aside from the initial $5.00 opening fee and the $988,004.60 transfer from Ballard's checking account.

28. The balance of the Veridian Account has continued to increase through monthly dividends payments.

29. The defendant property, which represents the funds contained in the Veridian Account, constitutes fraud proceeds and is therefore subject to forfeiture.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

30. The Plaintiff repeats and incorporates by reference the paragraphs above.

31. By the foregoing and other acts, the defendant property, $656,399.10 in United States currency, constitutes, or was derived from, proceeds traceable to violations of Title 18, United States Code, Section 1343, that is wire fraud, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

### SECOND CLAIM FOR RELIEF

32. The Plaintiff repeats and incorporates by reference the paragraphs above.

33. By the foregoing and other acts, the defendant property constitutes, or was derived from proceeds traceable to violations of Title 18, United States Code, Section 1344, that is bank fraud, and therefore, are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Teresa A. Moore
United States Attorney

By: */s/ John Constance*
John Constance
Assistant United States Attorney
400 E. 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122
E-mail: John.Constance@usdoj.gov

# VERIFICATION

I, Special Agent Aaron Volk, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 7 through 29 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 1/10/23

AARON VOLK
Digitally signed by AARON VOLK
Date: 2023.01.10 14:40:52 -06'00'

Aaron Volk
Special Agent
Federal Bureau of Investigation